THE PEOPLE, ex rel. JOHN RILEY, Appellant, *v.* JAMES JOURDAN as Commissioner, etc., Respondent.

The relator, who was captain of the police force in the city of Brooklyn, sent two police officers, at two or three o'clock, A. M., to the house of J., a married woman, with instructions to tell her he desired to see her at the station-house. Said officers went to the house of J., aroused the inmates, and, although informed that J. was sick, insisted that she should go with them, threatening to stay all night if she did not. She thereupon went, and at the station-house was subjected to an examination by relator for an hour, he asking questions in reference to one C. in a coarse and vulgar manner, frequently saying to her he did not believe her, and would have to keep her. After such examination he permitted her to go home. No complaint had been made against J. and no warrant had been issued for her arrest. Upon charges of misconduct and specifications setting forth the facts, and upon a hearing, wherein proof thereof was given, respondent, as commissioner of police of said city, found the relator guilty of the misconduct charged, and dismissed him from office. *Held* no . error. (§ 7, chap. 377, Laws of 1880; § 2, chap. 457, Laws of 1881.)

Also *held*, that it was immaterial that, in a letter written by defendant to the superintendent of police, notifying him of his decision, he mentioned other acts of misconduct and authorized an inference that these acts had

been considered by him in making his decision, as it formed no part of the record.

*It seems* that if there was any evidence upon which defendant could base his decision, it was not subject to review.

(Submitted June 27, 1882 ; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 12, 1881, which affirmed a decision made by defendant as commissioner of police and excise in the city of Brooklyn, removing the relator from office as captain of police of said city.

The material facts are stated in the opinion.

*Jerry A. Wernberg* for appellant. The removal of the relator by the commissioner was not authorized by the statutes. (Laws of 1880, chap. 377, § 7; Laws of 1881, chap. 457, § 2.) The statutes are mandatory and must, in all respects, be strictly complied with by the commissioner in removing a member of the force. (*Munday* v. *Bd. of Fire Commrs.*, 72 N. Y. 445.) The authority conferred by these acts must be exercised in strict conformity to and by rigid compliance with the letter and spirit of the statutes. (45 N. Y. 773.) These acts conferred power upon the commissioner to remove the relator, but only "upon cause," "after public trial and on conviction." (*People, ex rel. The Mayor*, v. *Nichols*, 79 N. Y. 588.) Whenever such a tribunal is created, its power is judicial, not arbitrary; it can only act on proof; when there is no charge or complaint, no judicial power can be exercised. (*People, ex rel. Miller*, v. *B'd of Police Commrs.*, 67 N. Y. 475.)

*Samuel Hand* for respondent. The respondent being the head of the police department and the sole commissioner of police, was vested with full power and authority, after the charge had been formally made and served upon the relator, to try him thereon, and dismiss him from the force, if he found that he had been guilty of misconduct, neglect of duty, or

that he was incapable, for any cause, of performing his duty. (Laws of 1873, chap. 863, §§ 8, 14, tit. 11; Laws of 1880, § 7, chap. 377.) The relator had no power or authority to send for Mrs. Johnson, and arrest her or take her into custody at the time and in the manner proved, and such conduct was, as a matter of law, misconduct. (*Boylston* v. *Kerr*, 2 Daly, 225; *Sternack* v. *Brooks*, 7 id. 142; *Butolph* v. *Bleest*, 41 How. 481; Laws of 1873, chap. 863, tit. 11, §§ 20, 27, p. 1338; *People, ex rel.* v. *B'd of Fire Commrs.*, 82 N. Y. 358.) On a review in cases of this kind, it is enough if there is any evidence to warrant the finding of the commissioner. (*People, ex rel.* v. *B'd of Police and Excise of the City of Brooklyn*, 69 N. Y. 408; *People, ex rel.* v. *Eddy*, 57 Barb. 593; 69 N. Y. 411; 82 id. 361; *Russell* v. *Gold*, 1 Wend. 210.) The opinion of the commissioner, printed in the case, cannot be used to defeat the decision, and it can have no more effect than would oral statements of the commissioner in the street. (*Bradley* v. *Aldrich*, 40 N. Y. 504; *Titus* v. *Orvis*, 16 id. 617; *McGregor* v. *Buell*, 1 Keyes, 163; *Case* v. *Phelps*, 39 N. Y. 164; *Snyder* v. *Beger*, 3 E. D. Smith, 235.)

EARL, J. The relator was a captain of the police force of the city of Brooklyn, and while doing duty as such on the 26th day of May, 1881, written charges were duly presented and filed against him with the respondent as police commissioner of the city by Mrs. Johnson, charging him with misconduct in this, that on the 24th day of May he sent two police officers to her house between two and three o'clock in the night-time and made her get out of bed and accompany them to a station-house where the relator asked her several questions about which she knew nothing, and when she answered stating that she had no knowledge of the matter upon which he questioned her, he would say "I do not believe you," and that he said several times during the conversation she then had with him, "Did not Sergeant Campbell say so and so?" and appeared to want her to say something against Campbell.

The charges and specifications were served on the relator

and he was placed on trial under them before the respondent as commissioner in June, 1881, and testimony was taken both for and against him.   There was evidence either showing or tending to show the following facts : That between two and three o'clock in the morning of May 24th, the relator sent two police officers to the house of Mrs. Johnson, with directions that they should tell her that he would like to see her and have an interview with her at the station-house.   As one of the police officers sent testified, " We were instructed to see Mrs. Johnson and fetch her to the station-house; request her to come to the station-house."   Upon their arrival at Mrs. Johnson's house the inmates were all in bed, but were aroused and informed that they came after Mrs. Johnson.   They were informed that she was sick, but they insisted that she should go with them to the station-house or they would remain all night.   She, not knowing what was wanted of her, and fearing that something had happened to her husband, consented to go with them to the station-house.   Her father accompanied them.   When she reached the station-house, she was taken to the presence of the relator in a room from which her father was excluded, and there he examined her for an hour, asking her questions about Sergeant Campbell and other matters, in a coarse and vulgar manner, frequently saying to her he did not believe her and that he would have to keep her.   After he had finished his examination he permitted her to return home.   No complaint had been made against her, she was charged with no offense, and no warrant had been issued for her arrest.   After hearing the evidence the respondent found the relator guilty of the misconduct charged, and dismissed him from office, and his decision has been affirmed at the General Term.

No question is made as to the jurisdiction of the respondent to try the relator, or as to the regularity of his proceedings, and it cannot well be doubted that the misconduct charged was such as to authorize the relator's dismissal. (Laws of 1880, chap. 377, § 7 ; Laws of 1881, chap. 457, § 2.) If the relator wanted any information from Mrs. Johnson, why did he not call upon her at a reasonable hour of the day ? Why send two

police officers in the night-time? His allegation that he did not order the officers to arrest her is of little account. He sent them to bring her to the station-house. He must have known that upon such a request as they would make she would feel constrained to obey, and that a woman would not leave her bed voluntarily at two o'clock in the morning and go to the station-house with two police officers without even knowing what was wanted of her or what was to be done with her. It is true that she did not resist the officers, and went voluntarily in the sense that she was not actually under arrest, but she was nevertheless constrained to go, and the relator is responsible for what the officers did in the execution of his orders.

The relator had no right or authority from any facts appearing to send officers to her house in the night-time, without any warrant, to disturb or annoy her, she being charged with no offense. When she was brought before him he detained her for an hour, conducting an examination which he had no authority to institute. How can he justify detaining a married woman from her home in this way, treating her with coarse vulgarity in the manner in which he conducted his examination? There was misconduct enough. We have nothing to do with the strength of the evidence. It is enough that there was some evidence upon which the respondent could base his decision. (*People, ex rel. Folk,* v. *Board of Police of the city of Brooklyn,* 69 N. Y. 408; *People, ex rel. Hart,* v. *Board of Fire Commissioners,* 82 id. 358.)

The contention that the relator was convicted of an offense with which he was not charged is not well founded. The formal decision found in the record shows that he was convicted of the precise misconduct with which he was charged. That misconduct was proved and was sufficient to sustain the conviction. It matters not that in a letter addressed by the respondent to the superintendent of police on the same day upon which he made his formal decision, notifying him of his decision, and giving his reasons therefor, he mentioned other acts of misconduct on the part of the relator besides those contained in the formal charges against him; and from that

letter we may infer that those other acts were considered by him in making his decision. But that letter is really no part of the record. The charge, the evidence and the formal decision entered are all that are to be looked at in reviewing the respondent's decision, and looking at them we find no ground for reversal.

The judgments should be affirmed, with costs not exceeding fifty dollars and disbursements.

All concur, except Tracy, J., not voting.

Judgment affirmed.